UNITED STATES DISTRICT COURT for the MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JIM BERTLING AND
ELYSE BERTLING,

Civil Case No.:

Petitioner(s)/Plaintiff(s),

vs.

SUSAN E. RESKE AND JAMES G. RESKE,

Respondents/Defendants.
_________________________________________/

PLAINTIFFS' VERIFIED COMPLAINT FOR
PRELIMINARY AND PERMENANT INJUNCTION AND OTHER RELIEF

COMES NOW the Plaintiffs, JIM and ELYSE BERTLING (hereinafter the "Bertlings" or Petitioners) hereby sues the Defendants, SUSAN RESKE and JAMES RESKE (hereinafter the "Reskes" or Respondents), and respectfully requests this Court issue an order temporarily and permanently enjoining the Reskes from recording, surveilling, filming, or broadcasting the private areas of the Bertlings' property, contacting them, harassing and otherwise assaulting them, on the following grounds:

JURISDICTION

1. This is an action for damages in excess of $75,000 exclusive of attorney's fees and costs, declaratory relief and for injunctive relief, or, in the alternative, an action in equity for other equitable relief, as justice may require, in the sound discretion of this court pursuant to

28 U.S. Code § 1331 and 18 U.S. Code §§ 2511 and 2520, consistent with this complaint. Jim and Elyse Bertling are husband and wife and brings action as a married couple.

VENUE

2. That venue is proper in the Middle District of Florida, Fort Myers division since the Bertlings' domicile is in Charlotte County, Florida as well as the conduct giving rise to this cause of action occurred in Charlotte County, Florida pursuant to 28 U.S. Code § 1391.

PARTIES

3. Petitioner, Jim Bertling, a natural person, resides in Charlevoix County, Michigan.

4. Petitioner, Elyse Bertling, a natural person, resides in Charlevoix County, Michigan.

5. At all material times hereto, Respondent, Susan E. Reske, a natural person, was a resident of Charlotte County, Florida.

6. At all material times hereto, Respondent, James G. Reske, a natural person, was a resident of Charlotte County, Florida.

INTRODUCTION AND CONTEXT

The Petitioners, Jim and Elyse Bertling are husband and wife. The Respondents, Jim and Sue Reske are husband and wife. The Bertlings and Reskes

live on the same street, on the same side of the street, approximately a half mile from each other. There are approximately 28 homes and/or undeveloped lots between the Reskes and Bertlings. The Reskes also own an undeveloped lot that spans the entire length of the northwest side portion of the Bertlings' property. The undeveloped lot is not contiguous to the property where the Reskes reside, a half mile down the road. It is the Reskes' undeveloped lot that shares a common border with the Bertlings. The Reskes proposed selling this undeveloped lot to the Bertlings, who declined the invitation for sale. The Bertlings have 6-foot hedge along this common border, and their pool and deck are located behind the hedge.

The Bertlings typically live in Michigan for extended periods of time and return to Florida during the winter months. When they returned to Florida, the Bertlings discovered that wild brush along the common border on the undeveloped lot were hosting pests that were a direct threat to Bertlings' home. The infestation originating from the Reskes' unimproved lot was certified by professional, licensed exterminators. Given the severity of the infestation and dire threat of destruction to the Bertlings' home, the infested brush was removed. The next day the Reskes blocked the Bertlings' driveway and exited the car enraged because the removal of the brush caused some disturbance to the soil. The Reskes demanded that the disturbed soil on the undeveloped lot be covered up with sod.

Consequently, the relationship between the Reskes and Bertlings soured,

and the Reskes began to harass, track, and threaten the Bertlings. James Reske, who is a former law enforcement officer, used his connection to law enforcement to intimidate the Bertlings. Despite these attempts to harass and imprison the Bertlings, the Reskes furthered their abuse of the Bertlings by installing a surveillance camera or imaging device and positioned it so that it could peer over the hedge and into private areas of the BERTLINGS' home. This suit follows.

SWORN FACTS AND SUPPORTING ALLEGATIONS FOR INJUNCTION

7. Petitioners, Jim & Elyse Bertling are the owners in fee simple absolute of the home and property located at 86 Pine Valley Court Rotonda West, FL 33947. The backyard of Petitioners' property is shielded by a 6-foot hedge. Within the curtilage of the backyard of the BERTLINGS' home there is landscaping that encloses the lanai, a pool and a pool deck. Exhibit A.

8. Respondents, James & Susan Reske, are the owners of the home located at 28 Pine Valley Court Rotonda West, FL 33947. The Reskes' home is approximately a half mile from the Bertling's home, but the Reskes own the undeveloped lot adjacent to the Bertlings' home. See Exhibit B.

9. On the common border of the property line (along the side portion of the Petitioners' home), is the Petitioners' more than 6-foot hedge that blocks

view of pool, deck, and lanai from the adjacent undeveloped lot, attached hereto as Exhibit C.

10. On or about 30th of November of 2024, Respondents, for their own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing the Bertlings, intentionally and with the approval and or at the direction of James and or Sue Reskes, acting singly or collectively, installed an infrared, night vision, spotlight surveillance camera or imaging device along the common border at the top of palm tree, attached hereto as Exhibit D.

11. The Respondents' camera, which is at least 25-feet high, is positioned in such a manner to peer over the 6-foot hedge into the bedrooms, pool and deck area, the curtilage and inner parts (hereinafter "The Private Area") of the Petitioners' home, without their knowledge or consent. See Exhibits D & E.

12. The Respondents' camera is located less than 13 feet from the Petitioner's boundary line toward the center of the BERTLINGS' pool and deck.

13. The Respondents' camera is on 24 hours a day and 7 days a week; is capable of capturing and storing audio and video remotely and physically; can detect and send notifications or alerts of movement, light

changes, people, vehicles, sounds, and voices; and is accessible by Internet, cellular, Bluetooth, wirelessly or other electronic means.

14. At all hours of the night a red dotted circle, signifying a night-vision Lense and capabilities, as well as a spotlight, can be seen from within the Petitioners' home, Private Area, as well as from within the 6-foot hedge, attached hereto as Exhibit E.

15. The Respondents' camera is on 24 hours a day and 7 days a week; and captures or intercepts communications from the Private Area.

16. The Petitioners have a reasonable expectation of privacy in the Private Area.

17. Within the Private Area of the Petitioners' home, the Petitioners could fully disrobe in privacy, especially after dusk, without being concerned that their undressing was being viewed, recorded, or broadcasted by another.

18. In fact, the Petitioners have enjoyed the ability to engage in private activities, including swimming in their pool and entertaining guests without those activities and conversations being viewed, recorded, monitored or broadcasted by another.

19. Furthermore, the Private Area is not accessible to the public, cannot be seen from the any public vantage point of the neighboring properties, or any public road, as depicted in Exhibit F.

20. There are conspicuous “No Trespassing” signs in big, black, bold letters on a red and white background located on the borders of the Petitioners’ property. See Exhibit G.

21. The Respondents have at least one (1) camera or imaging device within close proximity to the shared border.

22. The Petitioners did not consent or otherwise give Respondents permission to record, monitor, or surveil the Private Area or any other place that would otherwise be considered private or not viewable from a public vantage point.

23. This 25-foot-high camera is unacceptable, highly outrageous, invades on the Petitioners’ privacy and intrudes upon their seclusion.

24. The Petitioners have notified the Respondents of their objections including by certified letter and requested the camera be removed. Particularly, the Respondents were given 7 days from May 6, 2026.

25. The Respondents have failed to remove the 25-foot high camera or the other cameras that invades the Petitioners’ privacy.

26. The Petitioners filed multiple reports with the local law enforcement authorities, which did not resolve the situation.

27. The Petitioners notified the Parties' Homeowners' Association and requested that they require the Respondents remove the 25-foot-high camera from the undeveloped lot to no avail.

28. The Petitioners have exhausted all administrative remedies and there is no other adequate remedy of law available.

29. The actions and conduct of the Respondents infringes on the peaceable use and enjoyment of the Petitioners' property.

30. The Petitioners are no longer free to move and conduct themselves freely in the Private Areas as they did prior to the installation of the 25-foot high camera.

31. The Petitioners are in fear of not only being recorded, viewed, or observed in the Private Area, inside and outside of their home, but also a good basis to believe that the images are being distributed for the amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing the Petitioners.

32. The Respondents also maintain social media pages and have the capability of distributing images of the Petitioners, the Private Area, and

private activities of the Petitioners not otherwise viewable from any public or private place.

33. Removing the Respondents' 25-foot-high camera will restore the seclusion of the Private Area of the Petitioners' home.

34. The Petitioners have suffered irreparable harm, physical and emotional harm and have been damaged by the Respondents' conduct and intrusion upon their seclusion by the ongoing and continuous surveillance, recording, and broadcasting of their private activites.

35. Moreover since the initial incident with the Respondents on November 1, 2024, the Petitioners were subjected to vindictive conduct at their own home.

36. For example, when law enforcement came to the Petitioners' home in response to the 25-foot-high camera, the Respondents gratuitously came to the Petitioners' property to confront the officers – this demonstrates the Reskes are constantly monitoring the cameras.

37. Another example of the Respondents' desire to harass, intimidate, and intrude upon the Petitioners' seclusion occurred when the Respondents hired a contractor to only trim the palm tree that mounted the 25-foot camera to preserve a clear view of the Private Area of the Petitioners' home. See Exhibit D.

38. Another example of harassment occurred when the Respondents attended the HOA meeting simply to discourage any attempt by the HOA to resolve the dispute with the camera and publish stills of the Petitioner, Eylse Bertling, at her pool to the public the Respondents obtained from their 25-foot high surveillance camera.

39. The Petitioners suffered immeasurable physical, emotional distress, anguish, anxiety, embarrassment, and fear.

40. The Petitioners have retained counsel and is liable for attorneys' fees.

COUNT I – <u>TEMPORARY INJUNCTION</u>

41. The allegations of paragraphs 1 through 40 as set forth above are re-alleged in full and incorporated herein by reference.

42. Temporarily removing the 25-foot camera and prohibiting the Respondents from otherwise filming, capturing, recording or otherwise electronically broadcasting the Petitioners' private activities or Private Area pending the final outcome, will preserve the status quo or restore the last actual, peaceable, uncontested condition prior to this controversy.

43. The Petitioners' objection to the ongoing recording, filming, electronic surveillance or otherwise broadcasting of the Private Area of their home

or the private activities by the Respondents is a reasonable expectation of privacy that society is willing to accept.

44. Restoring the Petitioners' privacy, that is, permitting the Petitioners to use and enjoy their property as they did prior to the installation of the Respondents' 25-foot high camera outweighs the harm in requiring the Respondents remove the 25-foot camera or otherwise cease filming, recording or otherwise electronically broadcasting their private activities or the Private Area.

45. Issuing a temporary injunction requiring the Respondents to temporarily remove the 25-foot-high camera or otherwise cease filming, recording or otherwise electronically broadcasting their private activities or the Private Area until the final outcome will not harm the Respondents and will not be against public policy as the Respondents can install a camera on the vacant undeveloped property in such a manner as to not intrude on the Petitioners' reasonable expectation of privacy.

46. Issuing a temporary injunction until the conclusion of this matter furthers the public interests by preserving the right to privacy and recognizing the right to privacy in under common law and in Florida is distinct in and of itself and not merely incidental to some other recognized right.

47. The Petitioners are likely to succeed on the merits because both the Federal law and Florida law recognizes intrusion upon seclusion, and Florida jurisprudence, public policy, and common law support being free from the public gaze in the Private Area of the Petitioners' property.

48. The Petitioners are irreparably harmed by the continuous and ongoing filming, recording, broadcasting, and surveillance, and distribution of images of the Private Area and private activities of the Petitioners' home.

49. The Petitioners have suffered immeasurable physical, emotional and monetary harm from the diminished use and enjoyment of their property, past, present and future, as well as in the invasion of their solitude.

COUNT II – INVASION OF PRIVACY-INTRUSION UPON SECLUSION

50. The allegations of paragraphs 1 through 40 as set forth above are re-alleged in full and incorporated herein by reference.

51. The foregoing conduct of Defendants constitutes an intentional intrusion upon Plaintiffs' solitude.

52. The Plaintiffs have no prior knowledge of the 25-foot camera.

53. The Defendants' 25-foot camera intruded in the Private Area and recorded private activities without the Plaintiffs' knowledge or consent.

54. This intrusion would be highly offensive to a reasonable person.

55. The Plaintiffs have been harmed as a result of the Defendants' conduct and intrusion.

56. The Plaintiffs have suffered mental anguish, humiliation, embarrassment, and money damages.

57. The Plaintiffs pray the court require Defendants remove the 25-foot-high camera and otherwise permanently prohibit the filming, recording, broadcasting, or otherwise electronically viewing the Private Area of Plaintiffs' home as well as destroy any and all images of Plaintiffs' private activities.

58. Although Defendants can temporarily remove the cameras there is nothing that prevents them from reinstalling the cameras except for an order declaring the rights of the parties and the ability for the Defendants to encumber the Plaintiffs' property with unwanted lighting, filming, recording, surveillance or electronic signals.

COUNT III – NUISANCE AND TRESPASS

59. The allegations of paragraphs 1 through 40 as set forth above are re-alleged in full and incorporated herein by reference.

60. That the Defendants installed and affixed a floodlight approximately 13 feet from the common border, directed at the Plaintiffs' backyard and property without consent.

61. That when the Plaintiffs go into their own backyard or side yard at night the Plaintiffs' property is illuminated by the Defendants' very powerful and bright floodlight, which was installed after the Plaintiffs refused to purchase the Defendants' vacant, undeveloped lot and after removal of the infested brush. The Plaintiffs are unable to appreciate the night on their own property or utilize any benefit associated with night.

62. The floodlight and camera are unreasonable in character and renders the ordinary use or occupation of the Plaintiffs' property physically uncomfortable. The Plaintiffs have a right to be free of harassment: directed surveillance and floodlights.

63. No other neighbor of the Defendants or other occupants in the community is subjected to the foregoing conduct or encumbrance upon their property. It is not the norm, and the Defendants' conduct operates as a restriction on the Plaintiffs' ability to make use of their home.

64. The Plaintiffs and their property have been damaged by the Defendants' intentional conduct because the Defendants intentionally maintain their property in such a manner that unreasonably interferes with peace, use and enjoyment of the Plaintiffs' property.

65. The Plaintiffs pray the Court enjoin the Defendants from directing floodlights and cameras in the Private Area and remove the camera from the common border, which serves no legitimate purpose, or placed in a location that does not infringe on the Plaintiffs' property and privacy rights.

COUNT IV – DAMAGES AND INJUNCTIVE RELIEF

66. The allegations of paragraphs 1 through 40 as set forth above are re-alleged in full and incorporated herein by reference.

67. The Defendants installed or procured another person to install a surveillance camera that is capable of recording, capturing, broadcasting, publishing or storing oral communications of Plaintiffs.

68. That by doing so the Defendants intentionally intercepted or endeavored to intercept the oral communications of Elyse Bertling.

69. The Defendants intentionally intercepted or endeavored to intercept the oral communications of Jim Bertling.

70. The Defendants intentionally intercepted or endeavored to intercept the oral communications of the Plaintiffs' guests of.

71. That the surveillance camera installed by Defendants was connected, broadcasted, or published to an electronic device(s) by wire, cellular, Internet or wireless signal.

72. Defendants uploaded their recordings of Plaintiffs to the Internet so Defendants could access these recordings at any time, and Defendants have repeatedly accessed such recordings.

73. Defendants have published such recordings of Plaintiffs.

74. The oral communications which Defendants recorded of Plaintiffs or their guests were uttered by a person or persons exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.

75. The PLAINTIFFS request permanent injunctive relief, declaratory relief, and actual damages or $100 a day or $10,000, whichever is greater, including attorney's fees and costs, as they have been forced to retain counsel and are liable for attorneys' fees and costs.

COUNT V – <u>DAMAGES AND INJUNCTIVE RELIEF UNDER STATE LAW</u>

76. The allegations of paragraphs 66 through 74 as set forth above are re-alleged in full and incorporated herein by reference.

77. The PLAINTIFFS request pursuant to Fla. Stat. § 934.10 injunctive or declaratory relief, punitive damages, and actual damages or $100 a day or $1000, whichever is greater, including attorney's fees and costs, as they have been forced to retain counsel and are liable for attorneys' fees and costs.

**WHEREFORE**, the Plaintiffs, Elyse and Jim Bertling, respectfully requests that this Court issue a temporary and permanent injunction enjoining the Defendants from maintaining a camera on that vacant, undeveloped lot to record or pretend to record the Private Area of Bertlings' property or otherwise film, record, or otherwise electronically broadcast their private activities; require the Defendants destroy any and all imagines of the Bertlings in the private area of their home; enjoin the Defendants from directing floodlights at the Plaintiffs' home; compensatory damages; punitive damages, and an award of reasonable attorneys' fees and costs and further relief as the Court may deem just, proper and equitable and consistent with the allegations set forth in this Compliant.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands and prays for a trial by jury on all issues within this Complaint.

Respectfully submitted on this: 2nd day of September, 2026.

Jackman Law, P.A.

by:/s/ K. Keith Jackman

Keiron Keith Jackman, Esq.
Florida Bar No. 109489
JackmanLawPA@gmail.com
P.O. Box 27
Vero Beach, FL 32961
Telephone: (321) 378-0035
Attorney for Plaintiffs

SWORN OATH AND AFFIRMATION

Under penalties of perjury, I, Elyse Bertling, being over the age of 18, and competent to testify, declare that I have read the foregoing Complaint, and that the facts stated in paragraphs 7 through 40 are true and based on my personal knowledge.

Signature of affiant: /s/ Elyse Bertling

Under penalties of perjury, I, Jim Bertling, being over the age of 18, and competent to testify, declare that I have read the foregoing Complaint, and that the facts stated in paragraphs 7 through 40 are true and based on my personal knowledge.

Signature of affiant: /s/ Jim Bertling

by:/s/ Keiron Keith Jackman
Keiron Keith Jackman, Esq.
Florida Bar No. 109489